EMMA HOERATH ET AL.

v.

HARRIET J. HOGAN ET AL.

*Principal and Surety—Bond—Action of Debt—Dower.*

1. In the construction of written contracts, the intent of the parties is to be arrived at if possible.

2. In an action of debt on a bond given by the grantor of certain lands, one surety signing the same with him, the object thereof being to provide for the yearly payment of a given sum to satisfy the dower right therein of a person named, this court construes the same, and holds, in view of the evidence, that the judgment for the defendants can not stand.

[Opinion filed September 11, 1891.]

APPEAL from the Circuit Court of St. Clair County; the Hon. B. R. BURROUGHS, Judge, presiding.

Messrs. H. M. NEEDLES and M. W. SCHAEFER, for appellants.

Messrs. Hay & Barthel and Charles P. Knispel, for appellees.

Sample, J.   The appellants, as the heirs of Leonard Hoerath, brought this action against appellees, as the heirs of James Hogan, on the following bond:

"Know all men by these presents that we, the undersigned, Wm. H. Simpson and James Hogan, are held and firmly bound unto Leonard Hoerath in the sum of $100 for each and every year, during the natural life of Nancy Simpson, as witness our hands and seals this first day of May, 1863.

" The condition of the above obligation is such that the said William H. Simpson has, this 1st day of May, 1863, sold and conveyed by deed, certain lands in sections 10 and 17, in town 2 N., R. 8 west, to the said Leonard Hoerath, in which the said Nancy Simpson holds a dower right; and said Wm. H. Simpson hereby agrees to pay to the said Nancy Simpson the amount yearly required to satisfy said dower right, so that said Leonard Hoerath shall have entire possession without any let or hindrance of any person whatever, and we, the said Wm. H. Simpson and James Hogan, hereby bind ourselves, our heirs, executors and administrators firmly by these presents, as witness our hands and seals the day and year first above written.

"W. H. Simpson,      [Seal.]
"James Hogan.      [Seal.]"

That James Hogan was a surety and not a principal, as contended for by appellants, is thought to be shown by the recitals in the condition of the bond, and the case will be considered in that view.   At the time this bond was executed William H. Simpson held the land referred to in the bond as devisee of his father, subject to the right of the widow, Nancy Simpson, to one-fifth of all the grain and money rent that might be produced on said land, during her natural life, as provided by the will of Gideon Simpson, unless she chose to renounce the will. There had been no assignment of dower to the widow, neither had there been an acceptance by the widow under the will, so far as this record discloses.   That she did afterward or at the same time take under the will, is shown by the fact that she

enforced her rights thereunder by the suit brought against the appellants in 1887. The record does not disclose when the widow accepted under the will. The court refused to permit appellants to show this fact. It may be that she had not formally determined at the time this bond and the deed were executed, on May 1, 1863, as her husband had died only two months before, on March 1, 1863. Whether she had or not is not deemed to be vitally important, as the bond evidently by its terms imports that the parties executing it thought she would accept thereunder, as the proofs show she did. What may be termed the penal part of the bond provides, as will be observed, that the obligors should pay to Leonard Hoerath the sum of $100 each and every year during the natural life of Nancy Simpson. Had the parties contemplated that the widow would renounce the will and take under the law, no such provisions would have been inserted in the bond, as they could not have known but that in such case a part of this land would have been set off to her.

The whole terms of the instrument show that the obligors were contracting as against a fixed amount of liability, which evidently was the one-fifth share of the grain that might be raised on this land as provided by the will.

The performance of the conditions of the bond by William H. Simpson was to satisfy the penal part. The obligation put upon him was to pay Nancy Simpson the amount yearly required to satisfy her dower right, so that said Leonard Hoerath should have entire possession of said land without any let or hindrance of any person whatsoever. That would satisfy her dower right. In the first place, if she took under the will, that taking would be in lieu of her dower right in the sense of an exchange of one for the other and that is really what it means. Blatchford v. Newberry, 99 Ill. 11–62. But it would not, as contended by appellees, satisfy her dower right or interest in the land in the broad sense of the terms of the contract, for her interest in that land during her natural life was to be satisfied, "*So that said Leonard Hoerath shall have entire possession without any let or hindrance of any person whatsoever.*" This obligation could only be performed by satisfying that interest as it

Hoerath v. Hogan.

yearly fell due, so that a lien could not be decreed against the land to satisfy her interest, as was done by the proceedings begun in 1887, and which these appellants had to pay in order to have the entire possession without let or hindrance.

The words, "right of dower" as used in the bond, should not be given such a technical meaning as to defeat the purpose of its execution. All the other words of the contract should not be made subservient to the technical meaning of the word dower. They should all be read in the light of the situation of the parties at the time, and given that fair meaning that was contemplated and will effectuate the evident intent as disclosed by such reading and situation. It is not necessary to cite authorities in support of this rule of construction. In Robinson v. Stow, 39 Ill. 568, it is held that "even a strained construction of the language will be adopted to prevent an obvious injustice." It is then further said, p. 572, that "the experience of human affairs teaches courts that the intention is not to be sought merely in the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties and the objects they evidently had in view. It often happens that a particular clause in an instrument is made to bear a meaning quite inconsistent with the natural import of the terms used by reference to the entire language and general scope of the contract." "The judges," says Lord Hale "ought to be curious and subtle to invent reasons and means to make acts effectual according to the just intent of the parties." The court should have found and entered judgment for appellants. For reasons given the judgment will be reversed and the cause remanded.

*Reversed and remanded.*